UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHONGQING HUANSONG | ) | |
| INDUSTRIES (GROUP) CO., LTD., | ) | |
| CHONGQING HUANSONG SCIENCE | ) | |
| AND TECHNOLOGY INDUSTRIAL CO., | ) | |
| LTD. AND VIETNAM NEW CENTURY | ) | |
| INDUSTRIAL COMPANY LIMITED | ) | |
| | ) | |
| Plaintiffs | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| v. | ) | |
| | ) | |
| PERFORMANCE POWERSPORTS | ) | |
| GROUP, INC. f/k/a RICH GODFREY & | ) | |
| ASSOCIATES, INC. d/b/a COLEMAN | ) | |
| POWERSPORTS AND KINDERHOOK | ) | |
| INDUSTRIES, LLC | ) | |
| Defendants | ) | |

Plaintiffs Chongqing Huansong Industries (Group) Co., Ltd. ("Chongqing Industries"), Chongqing Huansong Science and Technology Industrial Co., Ltd. ("Chongqing Industrial") and Vietnam New Century Industrial Company Limited ("Vietnam Industrial") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby complain of Defendants Performance Powersports Group, Inc. f/k/a Rich Godfrey & Associates, Inc. d/b/a Coleman Powersports ("Performance Powersports") and Kinderhook Industries, LLC ("Kinderhook") (collectively, "Defendants") as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Chongqing Industries is a company organized and existing under the laws of the People's Republic of China with a principal place of business located at Shiyan Industrial Park, Huayan Town, Jiulongpo District, Chongqing 40052.

2. Chongqing Industries is a leading manufacturer of all-terrain vehicles ("ATV") and utility terrain vehicles, also called utility task vehicles, ("UTV") in China.

3. Chongqing Industrial is a company organized and existing under the laws of the People's Republic of China with a principal place of business located at No. 29 Qixin Avenue, Yanjia Subdistrict, Changshou District, Chongqing 401221.

4. Chongqing Industrial is a subsidiary of Chongqing Industries that supplies Chongqing Industries' ATVs and UTVs from China.

5. Vietnam Industrial is a company organized and existing under the laws of Vietnam with a principal place of business located at Plot CN2-05, Non Tarriff Area and Nam Dinh Vu Industrial Park (Area 1), Dinh Vu Cat Hai Economic Zone, Dong Hai 2 Ward, Hai An District, Hai Phong City, Vietnam.

6. Vietnam Industrial is a subsidiary of Chongqing Industries that supplies Chongqing Industries' ATVs and UTVs from Vietnam.

7. Non-party Hisun Motors Corp., U.S.A. ("Hisun Motors") is a wholly-owned subsidiary of Chongqing Industries with a principal place of business located at 310 East University Drive, McKinney, TX 75069.

8. Hisun Motors supplies ATVs and UTVs to dealerships and retail outlets in the United States.

9. Upon information and belief, Defendant Performance Powersports is a corporation organized and existing under the laws of the State of Arizona with a principal place of business located at 1775 East University Drive, Tempe, AZ 85281.

10. Defendant Performance Powersports is a national distributor of, *inter alia*, ATVs and UTVs to "Big Box" retailers like Lowe's and Walmart rather than through the traditional dealership channel.

11. Upon information and belief, Defendant Kinderhook is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 505 5th Avenue, Floor 25, New York, NY 10017-4910.

12. Upon information and belief, Defendant Kinderhook is a private investment firm that manages over $5 billion of committed capital, with a focus on middle market businesses in, *inter alia*, the automotive and light manufacturing sectors.

13. Upon information and belief, Defendant Kinderhook specializes in management buyouts of entrepreneurial-owned businesses and acquiring small capitalization companies lacking institutional support.

14. Upon information and belief, in October 2021, Performance Powersports became a subsidiary of Defendant Kinderhook, and subsequently Performance Powersports' independent existence ceased and it became dominated and controlled by Kinderhook to such a degree that it no longer had a recognizable and separate corporate identity.

15. Subsequently, and as set forth in more detail below, Kinderhook displaced directors and officers of Performance Powersports, fired the majority of Performance Powersports' work force, and directly took over the day-to-day management of Performance Powersports.

16. Upon information and belief, Kinderhook has continued to dominate and control Performance Powersports and has continued to fail to respect Performance Powersports as a separate corporate entity.

17. Pursuant to 28 U.S.C.A. §1332, this Court has subject matter jurisdiction over this action because the matter in controversy exceeds the sum of $75,000 and is between citizens of a foreign state and citizens of different states.

18. Pursuant to CPLR § 302, this Court has personal jurisdiction over Defendant Performance Powersports because, *inter alia*: (1) upon information and belief, it transacts business within New York and contracts to supply goods in New York; and (2) regularly does or solicits business, and derives substantial revenue from goods used, in New York, including but not limited to Performance Powersports' acceptance of capital and corporate oversight and control from Kinderhook, which is based in New York.

19. Pursuant to CPLR § 301, this Court has personal jurisdiction over Defendant Kinderhook because it is domiciled in New York.

20. Pursuant to 28 U.S.C.A. § 1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this district or, alternatively, because Defendant Kinderhook is subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

A.  The Parties' Relationship

21. Hisun Motors' Chief Executive Officer ("CEO") Jason Sun ("Mr. Sun") has known Richard Godfrey ("Mr. Godfrey"), Defendant Performance Powersports' founder, for more than twenty (20) years.

22. On or about May 6, 2010, Rich Godfrey & Associates, Inc. (now, Defendant Performance Powersports) was incorporated.

23. Chongqing Industries, *via* Vietnam Industrial and Chongqing Industrial, has been selling ATVs and UTVs to Defendant Performance Powersports since approximately 2014 without significant issues until recently.

4

B. The Parties' Contracts

24. Between April 6, 2021 and October 9, 2021, Defendant Performance Powersports and Vietnam Industrial entered into contracts for Defendant Performance Powersports to purchase ATVs and UTVs totaling $72,868,439.81 as follows (the "Vietnam Industrial Contracts"):

| Contract Number | Contract Date | Contract Amount |
|---|---|---|
| NC210441 | 04/06/21 | $ 1,689,836.69 |
| NC210429 | 04/06/21 | $ 3,675,927.36 |
| NC210431 | 04/06/21 | $ 2,976,576.40 |
| NC210433 | 04/06/21 | $ 2,976,576.40 |
| NC210435 | 04/06/21 | $ 8,136,250.72 |
| NC210437 | 04/06/21 | $ 8,996,815.70 |
| NC210439 | 04/06/21 | $ 1,689,836.69 |
| NC210443 | 04/06/21 | $ 1,971,476.14 |
| NC210453 | 04/09/21 | $    625,782.87 |
| NC210623 | 04/09/21 | $    170,668.06 |
| NC210557 | 05/08/21 | $ 1,763,569.91 |
| NC210579 | 05/14/21 | $ 1,382,477.31 |
| NC210537 | 05/20/21 | $    760,657.70 |
| NC210539 | 05/20/21 | $    760,657.70 |
| NC210541 | 05/20/21 | $ 1,877,596.32 |
| NC210595 | 05/20/21 | $10,008,892.96 |
| NC210529 | 05/20/21 | $ 1,137,787.04 |
| NC210531 | 05/20/21 | $ 1,649,791.21 |
| NC210533 | 05/20/21 | $ 2,218,684.73 |
| NC210535 | 05/20/21 | $ 2,218,684.73 |
| NC210627 | 06/09/21 | $ 2,065,355.95 |
| NC210659 | 06/23/21 | $ 3,442,259.92 |
| NC210657 | 06/23/21 | $    312,891.44 |
| NC211029 | 10/09/21 | $ 4,209,729.48 |
| NC211031 | 10/09/21 | $ 4,209,729.48 |
| NC211019 | 10/09/21 | $ 1,939,926.90 |
|  |  |  |

25. Between September 16, 2021 and February 9, 2022, Defendant Performance Powersports and Chongqing Industrial entered into multiple contracts for Defendant Performance Powersports' purchase of ATVs and UTVs totaling $15,505,167.09 as follows (the "Chongqing Industrial Contracts"):

| Contract Number | Contract Date | Contract Amount |
|---|---|---|
| HS210939 | 09/16/21 | $  255,342.57 |
| HS211033 | 10/09/21 | $4,023,683.96 |
| HS211035 | 10/09/21 | $4,023,683.96 |
| HS211037 | 10/09/21 | $3,017,762.97 |
| HS211039 | 10/09/21 | $3,504,701.97 |
| HS211059 | 10/18/21 | $  254,250.40 |
| HS220207 | 02/09/22 | $  212,870.63 |
| HS220209 | 02/09/22 | $  212,870.63 |
|  |  |  |

26. Claims regarding the quality of the goods had to be filed within thirty (30) days after arrival of the goods at the port of destination and claims regarding the quantity of the goods had to be filed within fifteen (15) days after arrival of the goods at the port of destination.

27. Defendant Performance Powersports made no complaints regarding the quality or quantity of the goods.

28. Under the terms of the parties' contracts, payment for each shipment of goods was due within one hundred twenty (120) days of delivery.

29. Defendants did not remit timely payments, and when they did remit a payment, it was only partial.

30. However, Defendants Performance Powersports and Kinderhook repeatedly acknowledged the balance owed to Plaintiffs and made promises to pay the same. Plaintiffs relied on these promises in continuing to supply goods and services.

31. As of the date of the filing of this Complaint, Defendants still owe Plaintiffs no less than $54,834,004.23 pursuant to the Vietnam Industrial Contracts.

32. As of the date of the filing of this Complaint, Defendants still owe Plaintiffs no less than $2,995,979.72 pursuant to the Chongqing Industrial Contracts.

33. In addition, Defendants owe several millions of dollars for unpaid and accrued interest under these contracts.

34. In total, Defendants owe Plaintiffs no less than $60 million based on unpaid contracts, along with other financial harm and damages caused by the wrongful acts of Defendants.

C.     A Private Investment Firm Takes Control

35. In April or May of 2021, Richard Godfrey, Defendant Performance Powersports' founder, advised Hisun Motors' CEO Jason Sun that an investment firm had contacted him regarding the potential acquisition of Defendant Performance Powersports and was in the process of performing due diligence.

36. In September of 2021, Defendant Performance Powersports received an infusion of capital from Defendant Kinderhook.  The specific details of the capital transaction are confidential and some of the details are unknown to Plaintiffs at this time.  However, it is apparent from the actions of Defendant Kinderhook that it took control of Defendant Performance Powersports as a result of this transaction.

37. As part of the transaction, Defendant Kinderhook added five (5) members to Defendant Performance Powersports' Board of Directors: (a) Kinderhook portfolio company CEO J. Pearson; (b) longtime Kinderhook Business Building Professional Mark Hanley; (c) Todd Balan; (d) Steve Hill; and (e) John Larson.

38. Upon information and belief, shortly thereafter, Defendant Kinderhook fired Mr. Godfrey as CEO and also terminated Defendant Performance Powersports' Chief Financial Officer, Chris Hunter, although Mr. Godfrey remained a board member of Defendant Performance Powersports.

39. On September 21, 2022 the following entities were formed in Delaware: (a) Performance Powersports Group Holdings, Inc.; (b) Performance Powersports Group Investor, LLC; and (c) Performance Powersports Group Purchaser, Inc.  Upon information and belief, these entities were created in conjunction with the infusion of capital transaction between Defendant Kinderhook and Defendant Performance Powersports.

40. On or about September 30, 2021, a Zoom meeting was held to discuss the business relationship between the parties going forward between, among others: (a) Richard Godfrey; (b) Defendant Kinderhook's Vice-President Kyle Dawson; (c) Defendant Kinderhook's Managing Director Paul Cifelli; (d) Hisun Motors' CEO Jason Sun; and (e) Cristina He, the General Manager of Chongqing Industries responsible for export sales.

41. Shortly before the meeting, Mr. Godfrey told Mr. Sun that he chose Kinderhook to acquire Defendant Performance Powersports and hoped that Hisun Motorsports and Chongqing Industries would support him.

42. During this brief meeting, Kinderhook advised it would be acquiring Defendant Performance Powersports and that it wished for Plaintiffs to continue providing goods and services.

43. Chongqing Industries agreed to continue to supply ATVs and UTVs to Defendant Performance Powersports in reliance on Kinderhook's statements and representations.

44. After consummating the acquisition of Performance Powersports, Kinderhook managed the day-to-day business of Performance Powersports through Defendant Kinderhook's Vice-President Kyle Dawson, Managing Director Paul Cifelli, and other officers placed by Kinderhook to manage and control Defendant Performance Powersports.

45. Around the same time when Kinderhook took over Performance Powersports, Performance Powersport began or continued accumulating a staggering amount of account payables owed to Plaintiffs.

46. In 2021, Defendant Performance Powersports did not remit timely payments, or only made partial payment. Cumulatively, by the end of 2021, Defendant Performance Powersports owed Plaintiffs a large amount of money for the goods that have not been paid.  This debt continued through 2022.

47. Upon information and belief, in March 2022, Defendant Performance Powersports paid $3,000,000 to its carrier in freight container fees for the release of ATVs and UTVs supplied by Plaintiffs.

48. Defendant Performance Powersports' failure to remit payment began impacting Chongqing Industries' ability to pay its own expenses.

49. Accordingly, Chongqing Industries requested a meeting with Defendant Kinderhook to discuss Defendant Performance Powersports' financial situation.

D.      Defendants Deceive Plaintiffs

50. On April 20, 2022, a Zoom meeting was held between: (a) Defendant Kinderhook's Vice-President Kyle Dawson; (b) Defendant Kinderhook's Managing Director Paul Cifelli; and (c) Chongqing Industries' General Manager Cristina He.

51. Ms. He told Messrs. Dawson and Cifelli how much Defendant Performance Powersports owed and how long the debt had been outstanding.

52. Messrs. Dawson and Cifelli expressed surprise at the amount owed and the parties decided to meet in-person.

53. On May 12, 2022, an in-person meeting was held in Dallas, Texas between: (a) Song Li, Sr., Chongqing Industries' founder and majority shareholder; (b) Hisun Motors' CEO Sun; (c) Kinderhook's Vice-President Kyle Dawson; and (d) Kinderhook's Managing Director Paul Cifelli.

54. During this meeting, Mr. Dawson represented that Defendant Kinderhook was unaware of Defendant Performance Powersports' mounting debt obligations until told by Ms. He in the April 20, 2022 Zoom call.

55. Mr. Dawson indicated that Kinderhook would stand behind Defendant Performance Powersports and ensure that its obligations to Plaintiffs were paid. Among various promises that were made, Mr. Dawson said that Chongqing Industries was lucky because, without Defendant Kinderhook's acquisition of Defendant Performance Powersports, Defendant Performance Powersports was not able to pay the debt owed and would have been bankrupt.

56. Messrs. Dawson and Cifelli told Mr. Li that Defendant Kinderhook wanted to continue the business relationship with Chongqing Industries, hoped that Chongqing Industries would release a shipment to Defendant Performance Powersports that had been stopped due to its outstanding debt) and presented Mr. Li with a proposal to remit weekly payments totaling approximately $40,000,000 (of the approximately $65,000,000 owed) by year's end (the "First Proposal").

57. Mr. Li rejected the First Proposal, suggesting that Defendant Performance Powersports pay at least $7,000,000 within the first month.

58. Messrs. Dawson and Cifelli promised to present a new payment plan to Chongqing Industries within the next week.

59. After the meeting, Defendant Kinderhook did not send Chongqing Industries a second proposed payment plan on time as promised.

60. Defendant Kinderhook sent the second proposed payment plan on or about June 23, 2022, about one and half month after the in-person meeting.

61. During this period, Mr. Sun repeatedly communicated with Mr. Dawson by text and phone, urging him to provide the plan as soon as possible.

62. On June 23, 2022, Defendant Kinderhook, through Mr. Dawson, then sent a second proposed payment plan, which included aggregated payment of approximately $38,000,000 (of the approximately $65,000,000 owed) with weekly payments of $1,000,000 and an additional $1,700,000 the first week of August, 2022 until the amount of approximately $38,000,000 was paid (the "Second Proposal").

63. Prior to the May 12, 2022 meeting, Messrs. Dawson and Cifelli had unambiguous knowledge of Performance Powersports' financial trouble and, contrary to their representations to Plaintiffs, they had no intention to provide financial resources to meet the proposed payment plans on the First Proposal and the Second Proposal.

64. Messrs. Dawson and Cifelli repeatedly made promises on behalf of Kinderhook, as the *de facto* controller of Performance Powersports, creating a false hope that Kinderhook would continue to provide financial resources to or on behalf of Performance Powersports and would satisfy the debt obligation owed to the Plaintiffs.

65. When communicating with Plaintiffs, Messrs. Dawson and Cifelli invariably used their email addresses under the domain name of "kinderhook.com", and Mr. Dawson's signature block consistently showed his official title as "Vice President of Kinderhook Industries, LLC" with an address matching Kinderhook's office in New York City.

66. During this same time period, in an attempt to induce Chongqing Industries to forbear taking immediate actions to recover the debt owed by Performance Powersports and to continue

supplying goods and services to Performance Powersports, which undoubtedly increased Chongqing Industries' exposure to Performance Powersports' insolvency, Defendant Kinderhook purportedly made a merger-and-acquisition offer to Hisun Motorsports and Chongqing Industries.

67. Around June 2022, Defendant Kinderhook's Vice-President Kyle Dawson visited Mr. Sun at Hisun Motorsports and introduced J. Pearson as Defendant Performance Powersports' new CEO.

68. Around June 2022, Mr. Dawson also expressed Defendant Kinderhook's interest in acquiring Hisun Motorsports and presented Mr. Sun with a Non-Disclosure Agreement.

69. Chongqing Industries declined to sign the Non-Disclosure Agreement, and demanded payments, telling Mr. Dawson that Defendant Kinderhook should first clear the balance owed to Chongqing Industries.

70. Starting in early June 2022, Defendants began making partial payments against the debt owed to Plaintiffs.  However, the payments did not last long.

71. Between approximately June 2, 2022 and July 15, 2022, Performance Powersports, under the control and at direction of Kinderhook, remitted 6 weekly installment payments of $1,000,000 each, to Chongqing Industries via Hisun Motorsports to be applied to the outstanding debt

72. Based on Defendant Kinderhook's representations, the false hope created by Kinderhook regarding continued payments on the debt owed by Performance Powersports, and Kinderhook's false indications to Plaintiffs of Performance Powersports' financial condition, Chongqing Industries authorized the release of the shipment that had been stopped, valued at more than $2,000,000.

73. After Plaintiffs had released the shipment, Defendants broke their promise to continue making these payments.

74. On July 29, 2022, Defendant Performance Powersports, under the control and at the direction of Kinderhook, remitted a reduced payment of $500,000 to Plaintiffs due to a purported delay in getting a new program running which impacted collections and "soft" sales.  This was less than the amount due under the agreed-upon payment plan.

75. Paul O'Leary, Defendant Performance Powersports' controller, stated that he believed Defendant Performance Powersports would be in the same position the following week looking at that week's projected cash outlook but "with our outlook for mid-August and beyond looking stronger, we feel we should be back to the $1M per week remittance by week ending 8/15."

76. Around this time, Mr. Sun met with Mr. Dawson at Kinderhook's office in Manhattan.

77. Mr. Dawson told Mr. Sun that Defendant Performance Powersports' sales were slow because the market was not good.

78. Mr. Dawson raised the possibility of acquiring Hisun Motorsports again, stating that he believed Hisun Motorsports' market was better and had its own factory, which Defendant Performance Powersports did not have.  However, this discussion did not progress.

79. On August 12, 2022, Defendant Performance Powersports, under the control and at the direction of Kinderhook, remitted a payment of $500,000.

80. On or about August 21, 2022, Mr. O'Leary advised that Defendant Performance Powersports was not able to meet its financial obligations pursuant to the payment plan because it had: (a) a large royalty payment it had to pay the week prior; and (b) slowing cash receipts on its "big box" items.

81. Defendants have made no further payment to Plaintiffs for the debt owed.

82. On or about September 24, 2022, Defendant Kinderhook sent a new proposal to Plaintiffs to address the debt owed Chongqing Industries and Hisun Motors:  (a) Defendant Performance Powersports would pay $15,000,000 to Chongqing Industries and Hisun Motors to pay down the balance owed *pro rata* (together with payments made under the payment plan, a total of $22,000,000 on a debt of about $65,000,000 (34 cents on the dollar)); or (b) conversion of $20,000,000 of outstanding accounts receivable into $15,000,000 worth of preferred shares in Defendant Performance Powersports (equaling 16.7% of preferred shares) and $5,000,000 worth of Class A Common shares in Defendant Performance Powersports (equaling 8.3% of Class A Common shares); or (c) $30,000,000 revolving credit/line of credit with the remaining accounts receivable placed on the credit/line of credit and paid down over time.

83. Plaintiffs did not accept this proposal.

84. Upon information and belief, around the same time, Defendant Performance Powersports conducted a "fire sale" of millions of dollars' worth of inventory supplied by Chongqing Industries, with Tractor Supply Company (one of the largest distributors), acquiring the inventory at a steeply discounted price.

85. The liquidation took place without any prior notice to Chongqing Industries, and it was secretly orchestrated by Defendant Kinderhook, while Kinderhook repeatedly continued to make false promises to Chongqing Industries and induced Chongqing Industries to forbear taking immediate actions to recover debt owed by Performance Powersports to Chongqing Industries.

86. Had Kinderhook not made these false promises to Chongqing Industries, Chongqing Industries would undoubtedly have taken earlier legal actions to protect its interests in the wrongfully disposed inventory.

87. Kinderhook's misrepresentation and fraudulent inducement have caused severe loss of Chongqing Industries and significantly increased Chongqing Industries' exposure to Performance Powersports' insolvency risk.

88. Upon information and belief, Defendant Performance Powersports, at the direction of Defendant Kinderhook's appointed board members, intends to make preferential payments in the immediate future to other unsecured creditors, draining its resources and, in all likelihood, rendering it insolvent or deepening its insolvency.

89. Upon information and belief, Defendant Kinderhook has exercised complete domination of Defendant Performance Powersports as evidenced by, *inter alia*, its appointment of numerous board members, its ouster of long-serving executives of Defendant Performance Powersports, its control of Defendant Performance Powersports' finances, policies, and business practices, and Kinderhook's multiple proposals by and from Kinderhook to address the debt owed to Plaintiffs.

90. Upon information and belief, Defendant Kinderhook, as the controlling stakeholder of Defendant Performance Powersports, advanced the proposals to induce Plaintiffs to refrain from taking legal action against Defendants with no intention that Defendants would fulfill the financial obligations of the proposals.

91. Upon information and belief, Defendant Kinderhook, as the controlling stakeholder of Defendant Performance Powersports, intentionally under-capitalized Defendant Performance Powersports to benefit itself and its owners.

92. Under Kinderhook's direction and control over Performance Powersports, Defendants Kinderhook and Performance Powersports have committed numerous wrongful acts, causing direct harm to Plaintiffs.

## COUNT I
### (Breach of Contract – All Defendants)

93. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 92 above as if fully set forth herein.

94. The Vietnam Industrial Contracts and the Chongqing Industrial Contracts are valid and binding contracts.

95. Plaintiffs performed in accordance with the Vietnam Industrial Contracts and the Chongqing Industrial Contracts.

96. Defendants have breached the Vietnam Industrial Contracts and the Chongqing Industrial Contracts by failing to pay the full price of the goods after taking delivery of them as required by the Vietnam Industrial Contracts, the Chongqing Industrial Contracts and Article 53 of the United Nations Convention on Contracts for the International Sale of Goods (the "Vienna Convention").

97. Plaintiffs have suffered damages in excess of $60,000,000 as a result of Defendants' breach of the Vietnam Industrial Contracts and the Chongqing Contracts.

98. As the controlling stakeholder and alter ego of Defendant Performance Powersports, Defendant Kinderhook is also liable for this breach.

99. Pursuant to the Vietnam Industrial Contracts, the Chongqing Industrial Contracts, and U.C.C. § 2-709, Plaintiffs are entitled to recover the price of the goods accepted but not yet paid for by Defendants.

## COUNT II
### (Account Stated – Defendant Performance Powersports)

100. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 99 above as if fully set forth herein.

101. That during the course of the sale and delivery of products and services, Plaintiffs did send invoices and statements of accounts to Defendant Performance Powersports on a regular and timely basis.

102. Defendant Performance Powersports accepted and retained the invoices and statements without objection.

103. The invoices and statements constitute an account stated to Defendant Performance Powersports, who did not object to the amounts stated thereupon.

104. The invoices and statements showed a balance due and owing from Defendant Performance Powersports to Plaintiffs in the sum of no less than $60,000,000.

### COUNT III
### (Unjust Enrichment– Defendant Kinderhook)

105. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 104 above as if fully set forth herein.

106. Defendant Kinderhook has been enriched by Defendant Performance Powersports' failure to remit payment in full for goods received from Plaintiffs at Plaintiffs' expense.

107. In addition, Defendant Kinderhook has been enriched by the release of the shipment valued at $2,000,000 at Plaintiffs' expense.

108. Further, Defendant Kinderhook has been enriched by Defendant Performance Powersports' wrongful liquidation of inventory acquired from Plaintiffs.

109. It is against equity and good conscience to permit Defendant Kinderhook to retain monies owed to Plaintiffs.

## COUNT IV
### (Intentional Misrepresentation – Defendant Kinderhook)

110. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 109 above as if fully set forth herein.

111. Defendant Kinderhook made various statements as described above to induce Plaintiffs to continue doing business with Defendants and to continue providing products to Defendants.

112. Plaintiffs relied on Defendant Kinderhook's statements in continuing to provide products to Defendants.

113. Plaintiffs were harmed by this reliance.

114. At the time that Defendant Kinderhook presented the First Proposal, it had a present, but undisclosed, intent to cause Defendant Performance Powersports to default on its terms, and presented the proposal to induce Plaintiffs' continued reliance.

115. At the time that Defendant Kinderhook presented the Second Proposal, it had a present, but undisclosed, intent to cause Defendant Performance Powersports to default on its terms, and presented the proposal to induce Plaintiffs' continued reliance.

116. Defendant Kinderhook made the misrepresentations to induce Plaintiffs to continue doing business with Defendants and to refrain from taking legal action against Defendant Performance Powersports.

117. Plaintiffs justifiably relied on the misrepresentations.

118. Plaintiffs have suffered damages in excess of $60,000,000 as a result of Defendants' misrepresentations.

**COUNT IV**
**(Fraudulent Transfer – Actual Fraudulent Intent and Constructive Fraudulent**
**Intent – All Defendants)**

119. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 99 above as if fully set forth herein.

120. Defendant Performance Powersports, at the direction of Defendant Kinderhook, conducted a "fire sale" of millions of dollars' worth of inventory supplied by Chongqing Industries, with Tractor Supply Company (one of the largest distributors), acquiring the inventory at a steeply discounted price.

121. These transfers constituted avoidable fraudulent transfers under state law.

122. Defendants did so with the actual intent to defraud Plaintiffs.

123. In addition or in the alternative, Defendants did so without receiving a reasonably equivalent value in exchange for the transfer and intended to incur, or believed or reasonably should have believed that Defendant Performance Powersports would incur, debts beyond its ability to pay as they became due, and that Defendant Performance Powersports was, or would become as a result of the transfers, insolvent.

**COUNT V**

**(Declaratory Judgment – Alter Ego and Veil Piercing – All Defendants)**

124. Plaintiffs reallege, reaffirm, and incorporate by reference paragraphs 1 through 123 above as if fully set forth herein.

125. Under 28 U.S.C. § 2201, Plaintiffs seek a declaration of rights and legal relations between Defendants.

126. Plaintiffs seek a declaration that Defendant Kinderhook dominates and controls Defendant Performance Powersports to such a degree that Defendant Performance Powersports

should be deemed an alter ego of Defendant Kinderhook and that the corporate veil should be pierced.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray to this Court for the following relief:

1. An award for Plaintiffs against Defendants for compensatory damages, equitable relief, attorney's fees, costs, and other relief;

2. An award for Plaintiffs against Defendants for breach of contract in an amount to be determined at trial, plus interest;

3. An award for Plaintiffs against Defendant Kinderhook in the amount it has been unjustly enriched to be determined at trial;

4. An award for Plaintiffs against Defendant Kinderhook for intentional misrepresentation in an amount to be determined at trial;

5. Avoidance of the transfer of inventory from Defendant Performance Powersports to Tractor Supply Company to the extent necessary to satisfy Plaintiffs' claim;

6. Reasonable attorneys' fees pursuant to New York Debtor and Creditor Law § 276-a (2021);

7. A declaration of rights and legal relations pursuant to 28 U.S.C. § 2201 as set forth above; and

8. For all other relief, both legal and equitable, that this Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all issues so triable.

Dated: December 16, 2022                     Respectfully submitted,

                              DGW KRAMER LLP

By: <u>/s/ Rongping Wu</u>
     Rongping Wu, Esq.
     Katherine Burghardt Kramer, Esq.
     DGW KRAMER LLP
     One Rockefeller Plaza, 10th Fl.
     Suite 1060
     New York, NY 10020
     T: (917) 633-6860
     F: (917) 630-6183
     lwu@dgwllp.com
     kkramer@dgwllp.com
     *Attorneys for Plaintiffs*